# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 1 6 2015

*Madsen C.J.*

CHIEF JUSTICE



This opinion was filed for record
at 8:00 AM on July 16, 2015

*Ronald R. Carpenter*

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89619-4 |
| Respondent, | ) | |
| v. | ) | En Banc |
| UNTERS LEWIS LOVE, | ) | |
| Petitioner. | ) | Filed  JUL 1 6 2015 |

YU, J.—This case is another opportunity to clarify our evolving jurisprudence on open courts. Today we decide if a particular method of challenging jurors after voir dire—a method commonly employed in trial courts around the state—violates the constitutional right to a public trial. At the conclusion of voir dire questioning, counsel exercised for cause challenges orally at the bench and subsequently exercised peremptory challenges silently by exchanging a list of jurors and alternatively striking names from it. All of voir dire, including the juror challenges, occurred in open court, on the record, and in full view of any observer in the

courtroom. We hold the juror challenges in this case were exercised in a manner consistent with the minimum safeguards of the public trial right and affirm.

## BACKGROUND

Petitioner Unters Lewis Love elected to go to trial on several counts of theft and bail jumping. The first day of trial was unremarkable from an open court perspective. Several preliminary matters consumed the morning, and the trial judge heard argument and ruled on these motions in open court and on the record. The jury pool was brought into the courtroom after lunch for jury selection. The trial judge placed the jury pool under oath and briefly explained the mechanics of jury selection, including the parties' right to challenge jurors.

Voir dire examination began immediately thereafter. Both the trial judge and counsel questioned the jury pool in open court; their questions and the potential jurors' responses were on the record. When questioning concluded, the trial judge asked counsel to approach the bench to discuss for cause challenges in the presence of the court reporter:

| THE COURT: | Any for-cause challenges? |
|---|---|
| [DEFENSE]: | Fifteen. |
| THE COURT: | Fifteen? Any objection? |
| . . . . | |
| [STATE]: | I think that's—the state has no objection to No. 15 being struck for cause. |
| THE COURT: | Mm-hm. Any others? |
| [DEFENSE]: | Number 30. |

2

THE COURT:  Number 30?

[STATE]:  Yeah.  No objection.

Verbatim Report Proceedings (Apr. 9, 2012) at 132-33.  Jurors 15 and 30 had strongly indicated they could not be impartial jurors in response to questions during voir dire, which occurred in the presence of Love, other potential jurors, and the public.  The trial judge granted both of Love's for cause challenges.  Though the discussion and ruling on these challenges occurred at the bench, the exchange was on the record and visible to observers in the courtroom.  The record does not indicate if observers could hear what was said, but no one was asked to leave the courtroom.

Peremptory challenges followed.  The record reflects that counsel exercised peremptory challenges silently in the courtroom by exchanging a written list of jurors between themselves.  Counsel alternated striking one name from the list (the struck juror sheet), indicating they had exercised a peremptory challenge and removed the juror, until each side had exhausted its challenges.[1]  The struck juror

---

[1] The method of exercising peremptory challenges on paper appears common in this state and is explicitly required in several counties. *See* COWLITZ COUNTY SUPER. CT. LOCAL CIV. R. 47(e)(9) ("The clerk shall keep a list of jurors passed for cause and when it is complete will provide the list to the attorneys for the parties who will, in turn, exercise challenges by striking the name of each challenged juror without oral comment."); FERRY\PEND OREILLE\STEVENS COUNTY SUPER. CT. LOCAL CIV. R. 47(e)(9) ("The exercise or waiver of peremptory challenges shall be noted silently."); GRANT COUNTY SUPER. CT. LOCAL CIV. R. 47(c) ("After examination of the panel, counsel will, in turn, exercise peremptory challenges by striking names from a roster of those panel members not previously dismissed."); HELLS CANYON CIRCUIT SUPER. CT. LOCAL CIV. R. 47(d)(6) ("When questioning by the court and counsel is completed, the Court will allow the private exercise of peremptory challenges by striking [the] name of the first exercised challenge from the panel of the first 12 jurors remaining after the entire panel has been passed for cause."); HELLS CANYON SUPER. CT. LOCAL CRIM. R. 6.3; KITTITAS COUNTY SUPER. CT. LOCAL CIV. R. 47

3

sheet, which was filed in the court record and available to the public, shows Love waived his peremptory challenges and the State challenged juror 4. There is no indication that spectators (prospective jurors included) were forced to leave the courtroom, that the courtroom was locked, or that anyone was prohibited from entering. Instead, the courtroom remained open while counsel exercised their peremptory challenges, in the same manner as it was during the discussion of the for cause challenges. The record does not reflect that observers were unable to see counsel exchanging the struck juror sheet.

The trial judge thereafter announced that a jury had been selected. In open court and on the record, the judge read the names of the first 14 jurors left on the struck juror sheet (excluding jurors 4 and 15) and empaneled 12 jurors and two alternates. The judge thanked and dismissed the remaining potential jurors—including jurors 4, 15, and 30—without further explanation. The empaneled jury convicted Love on all counts.

---

("Unless good cause is shown, all peremptory challenges shall be exercised in open Court at the side bar by marking the challenged juror's name on a form to be provided by the Court."); KLICKITAT\SKAMANIA SUPER. CT. LOCAL CIV. R. 9(VI)(A) ("In trial by jury cases, peremptory challenges shall be exercised secretly [by] mark[ing] and initial[ing] such challenge upon the sheet furnished for that purpose."); SPOKANE COUNTY SUPER. CT. LOCAL CIV. R. 47(e)(9) ("The exercise or waiver of peremptory challenges shall be noted secretly on the jury list."); YAKIMA COUNTY SUPER. CT. LOCAL CIV. R. 47(e)(1) ("All peremptory challenges allowed by law shall be exercised in writing. . . . The purpose of this rule is to preserve the secrecy of the peremptory challenge process and all parties and their counsel shall conduct themselves to that end."). Since we disapprove of secret proceedings, we assume that references to "secrecy" in these rules refer to exercising peremptory challenges silently on paper.

4

Love appeals his convictions, arguing that the method of jury selection in his case violated his right to a public trial. He maintains that exercising for cause challenges at the bench and peremptory challenges on the struck juror sheet effectively "closed" the courtroom, though it was unlocked and open, because the public was not privy to the challenges in real time. He also argues his right to be present at all critical stages of the trial was violated because he could not approach the bench with counsel to discuss the for cause challenges.

The Court of Appeals affirmed in an opinion that predates many of our recent public trial right cases. *State v. Love*, 176 Wn. App. 911, 309 P.3d 1209 (2013). We granted review to consider how our open courts jurisprudence affects how parties can exercise for cause and peremptory challenges at trial. *State v. Love*, 181 Wn.2d 1029, 340 P.3d 228 (2015).

## ANALYSIS

Love's two claims are purely legal questions, so our review is de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011); *State v. Strode*, 167 Wn.2d 222, 225, 217 P.3d 310 (2009).

A. PUBLIC TRIAL RIGHT CLAIM

We first consider Love's claim that potential jurors were challenged in a manner that violated his right to a public trial. A criminal defendant's right to a "speedy public trial" is found in article I, section 22 of the Washington Constitution,

one of two constitutional components of our open courts doctrine. Love's standing in this case flows from article I, section 22.[2] The other component to open courts, article I, section 10, guarantees the public that "[j]ustice in all cases shall be administered openly, and without unnecessarily delay." These related constitutional provisions "serve complementary and interdependent functions in assuring the fairness of our judicial system," *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995), and are often collectively called the "public trial right."

A three-step framework guides our analysis in public trial cases. First, we ask if the public trial right attaches to the proceeding at issue. Second, if the right attaches we ask if the courtroom was closed. And third, we ask if the closure was justified. *State v. Smith*, 181 Wn.2d 508, 513-14, 334 P.3d 1049 (2014) (citing *State v. Sublett*, 176 Wn.2d 58, 92, 292 P.3d 715 (2012) (Madsen, C.J., concurring)). The appellant carries the burden on the first two steps; the proponent of the closure carries the third. *See id.* at 516-17.

The State argues that Love's claim fails at the outset, urging us to hold that the public trial right does not attach to for cause or peremptory challenges. Typically experience and logic determine if the public trial right attaches to a particular court

---

[2] Whether a criminal defendant also has standing to assert the public's right under article I, section 10 is an open question that we need not address in this case. *See State v. Shearer*, 181 Wn.2d 564, 574, 334 P.3d 1078 (2014); *State v. Herron*, 177 Wn. App. 96, 318 P.3d 281 (2013), *review granted*, 182 Wn.2d 1001, 342 P.3d 326 (2015).

proceeding, though we can also rely on prior cases that have applied right to the proceeding at issue. *Sublett*, 176 Wn.2d at 73; *State v. Wise*, 176 Wn.2d 1, 12 n.4, 288 P.3d 1113 (2012) (noting it was "not necessary to engage in a complete 'experience and logic test,'" instead citing previous cases to support attachment). Our prior cases hold it "well settled that the right to a public trial . . . extends to jury selection," *State v. Brightman*, 155 Wn.2d 506, 515, 122 P.3d 150 (2005), and we reaffirm that the right attaches to jury selection, including for cause and peremptory challenges. Unlike administrative or hardship excusals, for cause and peremptory challenges can raise questions about a juror's neutrality and a party's motivation for excusing the juror that implicate the core purpose of the right, and questioning jurors in open court is critical to protect that right. Open and transparent questioning fosters public confidence in subsequent challenges to jurors and, ultimately, the composition of juries in criminal trials.

We nevertheless affirm Love's conviction because he has not shown a courtroom closure in this case, failing to carry his burden under the second prong of our analysis. We have reversed convictions for two types of closures. The first, obvious type of closure occurs "when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011); *see Brightman*, 155 Wn.2d at 511-12 (public excluded from courtroom during voir dire); *In re Pers. Restraint of Orange*,

152 Wn.2d 795, 801-02, 100 P.3d 291 (2004) (same). Love does not allege the courtroom was closed in this traditional way.

The second type of closure occurs where a portion of a trial is held someplace "inaccessible" to spectators, usually in chambers. *Lormor*, 172 Wn.2d at 93; *see also State v. Shearer*, 181 Wn.2d 564, 568, 334 P.3d 1078 (2014) (private questioning of juror in chambers); *Strode*, 167 Wn.2d at 227 (same of multiple jurors); *State v. Paumier*, 176 Wn.2d 29, 33, 288 P.3d 1126 (2012) (same). Love equates the for cause and peremptory challenges in his trial—which occurred in open court—to those exercised behind a closed chambers door. He argues the possibility that spectators at his trial could not hear the discussion about for cause challenges or see the struck juror sheet used for peremptory challenges rendered this portion of his trial inaccessible to the public.

We find no merit in that comparison. The public trial right facilitates fair and impartial trials through public scrutiny. *Shearer*, 181 Wn.2d at 566. The public's presence in the courtroom reminds those involved about the importance of their roles and holds them accountable for misconduct. *Id.*; *Strode*, 167 Wn.2d at 226. Effective public oversight of the fairness of a particular trial begins with assurance of the fairness of the particular jury.

Yet the public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was

questioned in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. The transcript of the discussion about for cause challenges and the struck juror sheet showing the peremptory challenges are both publically available. The public was present for and could scrutinize the selection of Love's jury from start to finish, affording him the safeguards of the public trial right missing in cases where we found closures of jury section. *See Wise*, 176 Wn.2d at 7-8; *Paumier*, 176 Wn.2d at 33-34. We hold the procedures used at Love's trial comport with the minimum guarantees of the public trial right and find no closure here.

Although Love argues for a broad rule that all peremptory challenges must be spoken aloud, written peremptory challenges are consistent with the public trial right so long as they are filed in the public record. Spoken peremptory challenges certainly increase the transparency of jury selection, but there are still legitimate methods of challenging jurors in writing, like the practice here, that do not amount to a courtroom closure because they are made in open court, on the record, and subject to public scrutiny.

In summary, Love cannot show a closure occurred on these facts and his public trial claim fails.

B.    RIGHT TO BE PRESENT CLAIM

Love next argues that his absence from the bench conference where the trial judge and counsel discussed and excused two jurors for cause violated his right to be present at critical stages of his trial.[3] Our state and federal constitutions protect the right of a criminal defendant to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987); *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 306, 868 P.2d 835 (1994).   This protection is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution; our state equivalent is article I, section 22, which, in addition to a "speedy public trial," also entitles defendants to "appear and defend in person."

Jury selection is a critical stage of a criminal trial under both the state and federal constitutions. *See Irby*, 170 Wn.2d at 884. But the record before us does not demonstrate a violation of Love's right to be present.   Love was present in the courtroom during all of voir dire, including potential jurors' answers to questions that form the basis for challenges.   Nothing suggests that Love could not consult

---

[3] The Court of Appeals declined to reach the merits of this error, finding it unpreserved and outside any of the circumstances in RAP 2.5(a).  But the record shows that Love himself tried to object to his lawyer conducting the juror challenge process.  Love asked the trial judge several times to approach the bench after his lawyer exercised the for cause challenges. This preserved the error.

with his attorney about which jurors to challenge or meaningfully participate in the process. *Cf. id.* (right to be present violated where portion of jury selection occurred between the court and counsel over e-mail, without consultation of jailed defendant). It is a long-standing rule that we do "'not, for the purpose of finding reversible error, presume the existence of facts as to which the record is silent.'" *Barker v. Weeks*, 182 Wash. 384, 391, 47 P.2d 1 (1935) (quoting 4 C.J. *Appeal and Error* § 2666 (1916)). Love's right to be present claim also fails.

## CONCLUSION

Potential jurors at Love's trial were questioned and challenged in an open courtroom and on the record. This is all that the public trial right requires of jury selection. We hold on these facts that exercising for cause challenges at a bench conference and peremptory challenges on a written list do not constitute a closure. Love's convictions are affirmed.

_____ Yu, J.

WE CONCUR:

_____ Madsen, C.J.

_____ Johnson, J.

_____ Owens, J.

_____ Fairhurst, J.

_____ Stephens, J.

_____ Wiggins, J.

_____ González, J.

_____ Gordon McCloud, J.