

2016 OCT 31 AM 9: 54

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 73785-6-I |
| | ) | |
| PARAMJIT SINGH BASRA, | ) | DIVISION ONE |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | FILED: October 31, 2016 |
| | ) | |

APPELWICK, J. — Basra was convicted of first degree murder for killing his wife. This court affirmed the conviction. In a personal restraint petition, he alleges that his rights to be present, to have a public trial, to testify in his own defense, and to receive effective assistance of counsel were violated. We deny the petition.

## FACTS

Paramjit Basra was charged with first degree murder and second degree felony murder for killing his wife, Harjinder Basra. State v. Basra, noted at 178 Wn. App. 1003, 2013 WL 6199251, at *1-2, review denied, 180 Wn.2d 1002, 321 P.2d 1206 (2014).

At trial, Basra argued that his mental illness prevented him from being able to premeditate and form intent. The jury found Basra guilty as charged. Id. at *2.

The court imposed a standard range sentence on the first degree murder conviction and vacated the charge of felony murder. Id.

Basra appealed, and this court affirmed the conviction. Id. at *2, *4. Represented by counsel, Basra filed a personal restraint petition.

## DISCUSSION

Basra contends that several errors require this court to reverse and remand for dismissal or a new trial. Alternatively, he argues that we should remand for a reference hearing.

A personal restraint petitioner must prove either a constitutional error that results in actual and substantial prejudice or a nonconstitutional error that constitutes a fundamental defect which inherently results in a complete miscarriage of justice. In re Pers. Restraint of Monschke, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). The burden is on the petitioner to prove the error by a preponderance of the evidence. Id.

The petitioner must support the petition with facts and the evidence available to support the factual allegations. In re Pers. Restraint of Rice, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Bald assertions and conclusory statements are not sufficient to entitle the petitioner to a reference hearing. Id. at 886. If allegations are based on matters outside the record, the petitioner must demonstrate that competent, admissible evidence would establish the facts. Id. And, if the allegations are based on the knowledge of others, the petitioner must present their affidavits or other corroborative evidence. Id. If the petitioner makes this threshold showing, the court examines the State's response, which should

2

identify any material disputed questions of fact. Id. If there are material disputed issues of fact, then the trial court will hold a reference hearing to resolve the factual questions. Id. at 886-87.

I.  Right to be Present

Basra argues that he was not present when several jurors were excused for hardship. He argues that conducting this proceeding in his absence violated his right to be present. And, he contends that he was denied his right to effective assistance of appellate counsel when counsel did not raise this issue on direct appeal.

Criminal defendants have the right to personal presence at all critical stages of the trial. Rushen v. Spain, 464 U.S.114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983). This constitutional right is rooted in the confrontation clause of the Sixth Amendment to the United States Constitution, but it is also protected by the Due Process Clause in situations where the defendant is not actually confronting the witnesses or evidence against him. United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985). A defendant has a due process right to be present where his presence has a reasonably substantial relation to his opportunity to defend against the charge. Id. Article I, section 22 of the Washington Constitution also explicitly guarantees the right to be present. WASH. CONST. art. I, § 22.

Basra contends that this case is controlled by State v. Irby, 170 Wn.2d 874, 246 P .3d 796 (2011). In Irby, prospective jurors filled out questionnaires. 170 Wn.2d at 877. The trial judge sent an e-mail to the prosecutor and defense counsel

suggesting that certain jurors be removed from the panel based on their answers to the questionnaires. Id. at 877-78. Via e-mail, Irby's counsel agreed to release all of the jurors mentioned, and the prosecutor agreed to release seven of the ten. Id. at 878. The judge sent another e-mail indicating that those seven jurors would be excused. Id. The minutes demonstrated that Irby was in custody at the time of these e-mails, and the record did not show that Irby was consulted about the dismissal of the jurors. Id. On appeal, the court held that conducting jury selection in this manner, with Irby absent, violated Irby's right to be present. Id. at 884.

Here, the court began jury selection on February 6, 2012. Potential jurors filled out a questionnaire that included questions about their prior jury service, connection with law enforcement and the legal system, prior testimony, and close friends or relatives who have been victims of similar crimes. Afterward, the court identified the 39 jurors who had indicated that it would be a hardship for them to serve. The court suggested that these jurors be dismissed so the parties could focus on the potential jurors who were likely candidates for this case. The State responded that it had no objection, and Basra's counsel stated, "That's fine with us." Those 39 jurors were excused.

The court then noted that a number of other potential jurors could serve, but they had indicated on the questionnaires that they would like to speak outside the presence of the other jurors. These jurors were brought into the courtroom individually. The court gave the attorneys the opportunity to examine the jurors. Several of these jurors were then dismissed.

Basra argues that he was not present based on a statement appearing at the beginning of the transcript for that day: "(On February 6, 2012, with counsel for the parties present. . .)." The transcript does not note Basra's presence. Basra also offers his own declaration, in which he states that he reviewed a copy of the transcript after trial. He says,

> During that review, I discovered for the first time that my attorneys, the prosecutor, and the judge met without me to excuse certain jurors for 'hardship.' I did not waive my right to be present at that part of my trial. Instead, if given a choice, I would have demanded to be present. In addition, I would likely not have agreed to excuse all of the jurors for cause.

Basra refers generally to the challenged proceeding as "Hardship Excusals." But, the Irby court limited its holding to proceedings that test jurors' fitness to serve on a particular case, rather than examine jurors' general qualifications. 170 Wn.2d at 882. Thus, the right to be present did not attach when the court in this case dismissed 39 jurors for hardship. To the extent Basra challenges this portion of the proceeding, we conclude he was not denied the right to be present.

Basra does not explicitly claim he was absent for voir dire of individual jurors. Basra must do more than simply make conclusory allegations that he was not present during jury selection. See Rice, 118 Wn.2d at 886. He states in his declaration that he concluded he was not present solely after reviewing the transcript. But, he must present evidence showing that his factual allegations are not based solely on speculation, conjecture, or inadmissible hearsay. Id. The type

5

of conjecture in Basra's declaration does not point to evidence that would support his allegations.

Additionally, the State has offered evidence that contradicts Basra's conclusory allegations. The State has provided the clerk's minute entry for the February 6, 2012 hearing. Those minutes state, "Deft, respective counsel[,] and interpreters[,] Sarbjit Singh and Santosa Wahl[,] are present in [c]ourt." The abbreviation "Deft" and the listing of interpreters establish that Basra was in fact present during this proceeding. A reference hearing is therefore not necessary on this issue.

The burden is on Basra to prove an error by a preponderance of the evidence. Monschke, 160 Wn. App. at 488. Basra has failed to meet his burden.

Basra also argues that he was denied his right to effective assistance of appellate counsel due to counsel's failure to raise this issue on his direct appeal. To succeed on a claim of ineffective assistance of appellate counsel, Basra must show the merit of the legal issue that counsel did not raise on appeal and also show that he was prejudiced. In re Pers. Restraint of Netherton, 177 Wn.2d 798, 801, 306 P.3d 918 (2013). Since the evidence does not support Basra's claim that he was absent during this proceeding, he fails to establish that it was error not to raise this claim on direct appeal.

II. Right to a Public Trial

Basra also contends that he was denied his right to a public trial when the trial court called three jurors into the courtroom individually for questioning about their questionnaires.

Criminal defendants have the right to a public trial, which is guaranteed by both the state and federal constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. And, the Washington Constitution additionally guarantees the right of a trial that is open to the public. WASH. CONST. art. I, § 10. These provisions are collectively referred to as the public trial right. State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015).

Washington courts follow a three step inquiry in public trial cases. Id. First, the court determines whether a public trial right attaches to the proceeding. Id. Then, if the right attaches, the court asks whether the courtroom was closed. Id. Lastly, the court asks if that closure was justified. Id. The burden is on the defendant for the first two steps, and on the proponent of the closure for the third. Id.

In Love, voir dire questioning occurred in open court. Id. at 602. For cause challenges were done at the bench, but on the record. Id. Counsel exercised peremptory challenges by passing a sheet of juror names between themselves. Id. at 602-03. On appeal, Love argued that this procedure violated his right to a public trial. Id. at 604. The court disagreed, reasoning that while the public trial right attaches to jury selection, Love had failed to show a courtroom closure. Id. at 605-06. Because no portion of the process was concealed from the public, the public could scrutinize the entire jury selection process. Id. at 606-07. Thus, Love's right to a public trial was not violated. Id. at 607.

Similarly, in this case the public trial right attached to the proceeding in which individual jurors were questioned. But, Basra has not demonstrated that the courtroom was closed during this proceeding. He alleges that the court's

7

statements to the individual jurors prior to examining them demonstrate that the courtroom was closed. After the jurors indicated that they wished to speak privately, the court called them in one at a time and permitted the attorneys to ask questions. The court told each juror, "The attorneys have some questions for you about your answers. What you tell us is just for the people in the room. And I'd ask you not to talk about it to the other jurors." From this language, it is clear that the court was informing the jurors that their conversations were closed <u>to the other jurors</u>. The court did not indicate that the courtroom was closed to any member of the general public. Like in <u>Love</u>, any member of the public could have observed the questioning, because no part of it was conducted in private. <u>Id.</u> at 607. The fact that this proceeding was on the record further indicates that it was open to the public. <u>See</u> <u>id.</u>

Nonetheless, Basra argues that a reference hearing is warranted to determine whether the courtroom was actually closed. The record here is insufficient to create a question of fact as to whether the courtroom was closed. His conclusory allegation that the courtroom was closed does not merit a reference hearing.

Basra has not met his burden to establish error by a preponderance of the evidence. Accordingly, counsel's decision not to raise this issue on direct appeal was not ineffective assistance of appellate counsel. <u>See</u> <u>Netherton</u>, 177 Wn.2d at 801.

III.   Right to Testify

Basra argues that he was effectively denied the right to testify when counsel asked him a series of questions on a single topic. He argues that the right to testify must, at a minimum, include the right to testify to the basic, relevant facts of the defense. In support of this argument, Basra provides his own declaration and the declaration of an experienced defense attorney.

A defendant has a fundamental constitutional right to testify in his or her own defense. Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). On a federal level, the right to testify is implicitly based in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Id. The Washington constitution explicitly protects the right to testify. WASH. CONST. art. I, § 22. This fundamental right cannot be abrogated by counsel or the court. State v. Robinson, 138 Wn.2d 753, 758, 982 P.2d 590 (1999). Only the defendant, not counsel, has the authority to decide whether or not to testify. State v. Thomas, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). A defendant's right to testify is violated if the final decision not to testify was made against the defendant's will. Robinson, 138 Wn.2d at 763.

This court reviews claims of denial of the right to testify as ineffective assistance of counsel arguments. Id. at 765-66. To succeed on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation was deficient in that it fell below an objective standard of reasonableness, and (2) this deficient representation prejudiced the defendant, meaning that there is a reasonable probability that the result of the proceeding

would have been different absent counsel's errors. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Basra testified in his own defense at trial. Defense counsel asked a series of questions, all having to do with Basra's turban. Counsel asked when Basra began wearing a turban, whether he wears one every day, and if the turban is an important part of his religion. Counsel also asked whether Basra was wearing a turban on the morning of July 27, 2009 and what color that turban was. Basra replied that he was wearing a turban, but he did not remember its color. He said that several police officers reported that the turban was orange, another officer stated that it was red, and the photographs from the time he was arrested showed that it was either maroon or brown. The State asked Basra one question: "You killed your wife?" Defense counsel objected to this question as outside the scope of direct, and the court sustained the objection.

Here, Basra cannot show deficient performance. Basra was not denied the right to testify. He insisted that he wished to testify, and his attorneys provided him that opportunity. Counsel did not prevent Basra from testifying.

Additionally, while the questions about Basra's turban may seem irrelevant, the record reveals that this issue was very important to Basra. He wrote a letter to the court explaining that he had identified the police officers' inconsistent statements and urged his attorney to investigate the color of his turban, but she did not do so. He emphasized his belief that if the officers were lying about or could not recognize the color of his turban, their testimony could not be admissible.

By examining Basra about his turban, counsel gave Basra an opportunity to speak on an issue of great importance to him.

Further, counsel's performance is not deficient if it can be characterized as legitimate trial strategy or tactics. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Dr. Vincent Gollogly testified as to Basra's report of depression and Basra's memory of the day of the killing. Had Basra testified to recount what happened on that day, he would have opened the door to cross-examination regarding any inconsistencies in his statements. Considering this, it was not objectively unreasonable for Basra's counsel to develop a strategy that relied on Dr. Gollogly rather than Basra to tell his story.

Basra argues that a reference hearing is necessary for prejudice to be assessed. But, he has failed to allege facts that show counsel's performance was deficient. Therefore, we do not need to reach the question of prejudice. See In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) ("We need not consider both prongs of Strickland (deficient performance and prejudice) if a petitioner fails on one."). We hold that Basra was not denied the right to testify.

IV.  Failure to Investigate

Basra argues that he received ineffective assistance of trial counsel when counsel did not investigate medical factors that contributed to Basra's mental illness. Basra contends that he urged counsel to seek blood testing to corroborate his mental illness, but counsel did not do so until months after the murder. And, he alleges that counsel failed to provide these results to the expert witness. He

asserts that this error prejudiced him, because he had a thyroid disorder, which is medically linked to depression.

Counsel's performance is given a strong presumption of effectiveness. In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). To determine whether counsel's performance is deficient, the court must consider whether counsel's assistance was reasonable considering all of the circumstances. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To provide adequate assistance, counsel must conduct a reasonable investigation that would enable counsel to make informed decisions about the best method of representing the client. Id. Ineffective assistance claims based on the duty to investigate must be assessed in light of the strength of the State's case. Davis, 152 Wn.2d at 722.

Failing to investigate medical evidence that is relevant to developing an informed theory of the case can fall below an objectively reasonable standard. See Brett, 142 Wn.2d at 880; State v. Fedoruk, 184 Wn. App. 866, 883, 339 P.3d 233 (2014). For example, in Brett, defense counsel knew that Brett had a history of physical and mental health problems. 142 Wn.2d at 880. Medical evidence would have been available at the time of trial preparation if defense counsel had reasonably investigated. Id. But, defense counsel did not seek to retain a mental health expert until just one month before the trial. Id. at 878. That expert did not receive the defendant's medical records until two days before trial. Id. And, the expert was not qualified to render an expert opinion on the subject for which he was retained. Id. In Fedoruk, the defendant had a history of serious mental illness and had previously been found not guilty by reason of insanity on several felony

12

charges. 184 Wn. App. at 885. Yet, defense counsel did not retain a mental health expert or otherwise have Fedoruk's mental health condition evaluated until the day before jury selection. Id. at 881-82. Given the State's strong circumstantial evidence against the defendant, counsel's failure to obtain an expert evaluation was unreasonable. Id. at 882.

The facts here are distinguishable. Here, Basra's trial counsel investigated his mental health conditions. Counsel retained an expert, Dr. Gollogly. Dr. Gollogly examined Basra and diagnosed him with depression. Medical evidence showing that Basra's depression was caused by a thyroid disorder, while relevant, would have merely corroborated Basra's self-report by showing that Basra's symptoms were consistent with a thyroid disorder. It would not have necessarily changed the diagnosis. Neither the diagnosis nor the cause was at issue at trial. Rather, the issue was whether Basra's depression interfered with his ability to form intent. Counsel conducted a reasonable investigation by retaining an expert who examined Basra. We conclude that counsel's performance was not deficient.[1]

V.    Closing Argument

Basra argues that his trial counsel provided ineffective assistance of counsel by conceding that Basra was guilty of manslaughter without his permission. Basra argues that this error entitles this court to automatically find

---

[1] Because we conclude that counsel's performance was not deficient, we need not reach the question of prejudice. See Crace, 174 Wn.2d at 847. However, we note that the State's expert also concluded that Basra suffered from acute depression. The cause of this depression was not at issue, only whether it prevented Basra from forming the intent to commit the crime charged.

prejudice and overturn his conviction. Alternatively, he contends that this claim should be remanded for a reference hearing.

Defense counsel began closing argument by stating, "Guilty. Guilty. That's the finding that we think this jury is going to make." He continued, "The next question, though, is: Guilty of what?" Counsel clarified,

> Now, let me make it clear, our position as Defense is that Mr. Basra is not guilty, not guilty of any of the crimes, not guilty as charged, or of any of the lesser offenses, based on him having mental illness at the time, on July 27th, based on the mental illness interfering with his ability to form intent, and to form premeditated intent to murder his wife.

But, counsel recognized that the jury might find that Basra is guilty of manslaughter in the second degree. Counsel returned to this theme at the end of his argument, telling the jury that while this seems like a complicated case, at the end it comes down to the fact that a man suffered from mental illness and it resulted in his wife's death. Counsel concluded,

> You folks can just go ahead and just go back there and just be, like, not guilty. Okay, that's fine. That's what our first position would be. That's what we prefer. But you're going to give it some thought. You can spend a whole bunch of time trying to grapple with all of these differe[nt] theories the Prosecution's thrown out there.
>
> Premeditated, intentional, reckless, you know, felony murder, felony murder under reckless, felony murder strangulation: You can just reject all of that if you want. You can just put 'not guilty' on there. Go ahead and fill in 'guilty' on the Manslaughter in the Second Degree, and you'll be done.

Counsel offered two alternatives for the jury: preferably, the jury would find Basra not guilty, because his mental illness interfered with his ability to form intent, but

otherwise, the jury should stop at finding him guilty of manslaughter in the second degree.

Counsel's performance is strongly presumed to be reasonable. Grier, 171 Wn.2d at 33. Where counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. Id. A defendant may rebut the presumption that counsel's performance was not deficient by demonstrating that there is no conceivable legitimate tactic explaining counsel's performance. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

In certain circumstances where the evidence of guilt on a particular charge is overwhelming, counsel may concede guilt of that charge to the jury. State v. Silva, 106 Wn. App. 586, 596, 24 P.3d 477 (2001); State v. Hermann, 138 Wn. App. 596, 605, 158 P.3d 96 (2007). Conceding guilt can be a sound trial strategy when the evidence of guilt is overwhelming and the charge in question is a lesser charge, so there is an advantage to be gained. Silva, 106 Wn. App. at 596. The attorney does not need to consult with the client before pursuing this kind of strategy. Id. Where a concession is a sound trial strategy or tactic, it does not constitute deficient performance. Hermann, 138 Wn. App. at 605.

Here, counsel did not concede guilt entirely on the manslaughter in the second degree charge. Counsel emphasized multiple times that the defense's primary position was that Basra was not guilty. However, even if we were to treat counsel's statements as conceding guilt, Basra has shown no error. The evidence that Basra killed his wife was overwhelming. His daughter, who witnessed the killing, testified. Basra, 2013 WL 6199251, at *1. The State played a recording of

her calls to 911, in which she said that Basra was "beating" Harjinder, that he tried to kill Harjinder by "pushing her neck," and that "he grabbed a rope and just put it on my mom's neck." Id. The police officers who arrived at the scene testified as to Basra's statements to them: "Ah, ah, the problem is I killed my wife. She's in the room to the right;" "I have family problems;" and "She has problems with men, so I killed her." The issue was whether he was capable of forming the intent to commit a crime. Manslaughter in the second degree was the least serious charge that Basra faced, and a conviction on this charge required only criminal negligence. Conceding guilt on this charge would have been consistent with Basra's defense that due to his mental illness, he could not form the requisite intent for premeditated intentional murder, intentional murder, or intentional assault. We conclude that to the extent counsel admitted guilt of manslaughter in the second degree, it was in accordance with a sound trial strategy, and did not constitute deficient performance. Therefore, we deny Basra's claim of ineffective assistance.

We deny the petition.

WE CONCUR: