# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47957-5-II |
| Respondent, | |
| v. | |
| BRIAN L. STREATER, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — Brian L. Streater appeals his jury trial convictions for second degree assault with a firearm sentencing enhancement, second degree malicious mischief, and two counts of fourth degree assault.[1]  The State concedes that the trial court improperly imposed the firearm sentencing enhancement because the jury found that he was armed with only a deadly weapon, and we accept this concession.  We further hold that (1) for-cause exceptions exercised during jury selection in a sidebar did not violate Streater's right to a public trial, and (2) the trial court did not err by refusing to instruct the jury on the lesser-included offense of unlawful display of a weapon. Accordingly, we affirm Streater's convictions, but we remand to the trial court to strike the firearm sentencing enhancement and to impose a deadly weapon enhancement.

---

[1] Streater was convicted of second degree malicious mischief and the two counts of fourth degree assault in his first trial; his second degree assault conviction and its accompanying firearm sentencing enhancement followed a second trial.

FACTS

I.  BACKGROUND[2]

From November 2014 through the beginning of January 2015, Streater was in a relationship with his co-worker, Kristy Boatner.  According to Boatner, she ended the relationship with Streater shortly after moving to an apartment in Olympia, but the two continued to be friends and saw each other frequently.  According to Streater, the two were still in a relationship as of January 24.

In the early morning hours of January 24, Boatner was in her new apartment with another co-worker, Kalai Cababat, talking.  While they were in the kitchen, Streater arrived at the back door.  According to Boatner, she opened the door and let him in; according to Streater, he let himself in with his own key.  A few minutes after entering the apartment and talking with Cababat and Boatner, Streater pushed Boatner to the floor.  Cababat told Streater to leave and placed himself between Streater and Boatner.

Streater and Cababat stepped outside, and Boatner went upstairs and locked herself in a bedroom.  Streater then asked Cababat if he (Streater) could get his "'bags'" from upstairs.  3 Report of Proceedings (RP) at 544.  Cababat and Streater then went upstairs.  Streater went into a bedroom and picked up a couple of bags, but he put them back down.  He then went to the bedroom where Boatner was, broke open the door, and started yelling at Boatner.

Cababat told Streater that he needed to leave, and they both went downstairs.  On his way out of the apartment, Streater broke a window.  Streater then left the apartment and walked away. Cababat and Boatner did not call the police at that time.

---

[2] Because the background facts relate exclusively to the second degree assault, they are based on the record from the second trial.

Between 30 and 45 minutes after Streater left, Boatner and Cababat heard a car drive up. Cababat went outside and saw Streater come running through a gate onto the patio area. Cababat observed that Streater had a handgun, and he heard and saw Streater pull the slide of the gun back as he passed by and entered the apartment. Another co-worker, Thavaro Som, was right behind Streater.[3] Cababat called 911.

According to Boatner and Cababat, Streater pointed the gun at Boatner when he reentered the apartment. Som quickly entered the room, took the gun from Streater, and walked back outside.

Streater then went upstairs and returned with what appeared to be luggage. According to Boatner, as he walked towards the back door, he said. "'I'll see you at work.'" 3 RP at 473. When she did not respond, he threw a glass light fixture at her and then pulled her off the counter and hit her in the face, arms, and ribs. When she fell to the floor, he then kicked her in the shin. Streater then left with Som.

Officers stopped Som's vehicle and arrested Streater. At one point, Streater admitted to one of the officers that he had entered the apartment with a gun, but he asserted that he had held the gun at his side and that he did not point it at anyone.

## II. PROCEDURE

The State charged Streater with second degree assault while armed with a deadly weapon, third degree malicious mischief, and two counts of fourth degree assault.[4] The State also alleged

---

[3] Som later testified that Streater had unexpectedly opened his glove box and took out the gun when he got out of Som's car.

[4] The State also alleged that each offense was a domestic violence offense.

a firearm sentencing enhancement as to the second degree assault charge. The case proceeded to a jury trial.

## A. FIRST TRIAL

During jury selection at the first trial,[5] the trial court and the parties discussed which jurors to excuse in a sidebar that was not transcribed. Following the sidebar, the trial court made the following statement on the record:

> Counsel, I want to just make a record of the sidebar that we had. It was actually after the first questioning period and four jurors were excused at that time. Jurors 5 and 10 were excused for hardship, and Jurors 9 and 39 were excused for cause based on answers they had given. There were no challenges for cause or hardship after the second questioning period when we had another sidebar before we began the jury selection.

1 RP at 21. The trial court then asked the parties if there was anything else that needed to be put on the record, and they both agreed that there was not.

After hearing evidence and argument, the jury was unable to reach a verdict on the second degree assault charge, and the trial court declared a hung jury on this charge. But the jury found Streater guilty of the two fourth degree assault charges and the third degree malicious mischief charge.

## B. SECOND TRIAL

The second trial addressed only the second degree assault charge and the accompanying firearm sentencing enhancement. The State's witnesses testified as described above.

In addition, Streater testified that he brought the gun with him when he returned to the apartment out of concern that Cababat would attempt to harm him, that he did not point the gun at

---

[5] We note that the verbatim transcript of jury voir dire is not part of the appellate record.

Boatner, that he had merely kept the gun at his side, and that he never intended to threaten anyone with the gun. Streater also testified that he had rented the apartment and considered it "[his] place," that he had keys, and that he had moved his "things" into the apartment on the day of the incident. 4 RP at 650, 655. Som also testified that when he took the gun away from Streater, Streater was holding it at his side and not pointing it at Boatner.

After both parties rested, the trial court and parties discussed jury instructions. Defense counsel requested that the trial court give a lesser-included instruction for unlawful display of a weapon, arguing that the evidence supported an inference that Streater had committed only that crime.

The State opposed this instruction. In addition to arguing that the evidence did not support an inference that Streater had committed only the lesser offense, the State argued that the instruction was improper because "in this case, the State never could have charged Mr. Streater with unlawful display of a firearm" since the incident occurred when Streater was in his place of abode.[6] 4 RP at 694. Defense counsel replied that Streater had established that the evidence supported an inference that he had committed the lesser crime. In response to the State's argument that it could not have charged Streater with unlawful display because the incident occurred in

---

[6] RCW 9.41.270 provides in part,

> (1) It shall be unlawful for any person to carry, exhibit, display, or draw any firearm, dagger, sword, knife or other cutting or stabbing instrument, club, or any other weapon apparently capable of producing bodily harm, in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.
>
> . . . .
>
> (3) Subsection (1) of this section shall not apply to or affect the following:
> (a) Any act committed by a person while in his or her place of abode or fixed place of business.

Streater's place of abode, defense counsel stated that he did not "think these are the types of facts" that were contemplated by the place-of-abode limitation, but he "would need to follow up with the case law in regards to that subsection."[7] 4 RP at 697-98. The trial court ruled that (1) Streater had not shown that the evidence supported an inference that Streater had committed only unlawful display of a weapon and (2) an unlawful display of a weapon charge was unavailable to the State since the incident occurred in Streater's place of abode.

The jury found Streater guilty of second degree assault. It also found by special verdict that Streater was "armed with a *deadly weapon* at the time of the commission of the crime of assault in the second degree." Clerk's Papers (CP) at 83 (emphasis added). In addition, the jury found that Streater and Boatner were members of the same family or household. Despite the jury's special verdict, the trial court imposed a 36-month *firearm* sentencing enhancement at sentencing. RCW 9.94A.533(3)(b).

Streater appeals his convictions and the firearm sentencing enhancement.

ANALYSIS

I. PUBLIC TRIAL

Streater argues that the trial court violated his right to a public trial at his first trial by striking jurors for cause during a sidebar without first conducting a *Bone-Club*[8] analysis on the record or making a contemporaneous record of the sidebar. We disagree.

---

[7] There is nothing in the record regarding whether defense counsel supplied any additional information to the trial court on this issue.

[8] *State v Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

### A. LEGAL PRINCIPLES

Whether the trial court has violated a defendant's right to a public trial is a question of law that we review de novo. *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). When evaluating a public trial challenge, we apply a three-step framework. *State v. Love*, 183 Wn.2d 598, 605, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524 (2016). We first determine if the public trial right attached to the proceeding at issue. *Love*, 183 Wn.2d at 605. Second, if the appellant establishes that the public trial right attaches, we next determine whether the courtroom was closed. *Love*, 183 Wn.2d at 605. And third, if the appellant establishes that there was a closure, we determine whether the closure was justified. *Love*, 183 Wn.2d at 605. "The appellant carries the burden on the first two steps; the proponent of the closure carries the third." *Love*, 183 Wn.2d at 605.

### B. RIGHT TO PUBLIC TRIAL ATTACHES

We first address whether Streater has established that the right to public trial attached to the proceedings in question. "[I]t is clear that for cause and peremptory challenges implicate the public trial right. *Love*, 183 Wn.2d at 605. Where prior cases set a clear precedent, we need not engage in the full 'experience and logic' analysis." *State v. Effinger*, 194 Wn. App. 554, 560, 375 P.3d 701 (2016). Thus, Streater has met his burden on this issue.

### C. NO CLOSURE

We now turn to whether Streater has established a closure. We conclude that he fails to meet his burden on this issue.

This case is almost identical to *State v. Anderson*, 194 Wn. App. 547, 337 P.3d 278 (2016). In *Anderson*, we held that no closure occurred when (1) the potential jurors were questioned in open court, (2) the trial court struck jurors for cause at an untranscribed sidebar conference without first conducting a *Bone-Club* analysis, and (3) the trial court later memorialized the sidebar on the record by means of a colloquy in which it identified the jurors that were excused for cause. *Anderson*, 194 Wn. App. at 549, 552-53. Other than the fact that the trial court here failed to also identify which party had sought the for-cause dismissals, the facts here are the same as in *Anderson*. *See* 194 Wn. App. at 549. Streater does not, however, show that the public could not have discerned who sought the excusal based on the record of the voir dire. Because this case is nearly identical to *Anderson*, we adopt the reasoning in *Anderson* and hold that there was no closure in the first trial. Because there was no closure, Streater fails to show that his public trial rights were violated.[9]

## II. LESSER-INCLUDED INSTRUCTION

Streater next argues that the trial court erred when it denied his request for a lesser-included instruction of unlawful display of a weapon in his second trial because he established both the legal and factual prongs of the *Workman*[10] test.[11] Regardless of whether Streater satisfied the *Workman* test, this argument fails.

---

[9] Because there was no closure, we need not address whether any closure was justified.

[10] *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

[11] Streater also argues that if defense counsel failed to preserve this issue for appeal, that failure amounted to ineffective assistance of counsel. Because it is clear from the record that defense counsel preserved this issue, we do not address Streater's ineffective assistance of counsel argument.

The trial court refused to give the lesser-included instruction on unlawful display of a weapon on two grounds. First, it found that Streater had failed to meet the factual prong of the *Workman* test. Second, it found that the State could not have charged Streater with unlawful display of a weapon because the incident occurred in his place of abode. Streater does not challenge the trial court's reliance on the place-of-abode exception to unlawful display of a firearm.[12] Thus, he does not show that the trial court erred in refusing to instruct the jury on the lesser-included offense of unlawful display of a weapon.

### III. IMPROPER FIREARM SENTENCING ENHANCEMENT

Finally, Streater argues that the trial court erred when it imposed a firearm sentencing enhancement despite the jury having found that he committed the offense while armed with a deadly weapon rather than a firearm. The State concedes that this was error and asks that we remand this matter for the trial court to impose the proper sentencing enhancement. We accept the State's concession. *See State v. Williams-Walker*, 167 Wn.2d 889, 901-02, 225 P.3d 913 (2010) (trial court's imposition of firearm sentencing enhancement when jury returned a special verdict finding that the defendant had been armed with only a deadly weapon was error).

---

[12] RCW 9.41.270(3) establishes the place-of-abode exception. We note that although the State argues in its response that the place-of-abode exception supported the trial court's refusal to give this instruction, Streater did not file a reply addressing this argument.

No. 47957-5-II

Accordingly, we affirm Streater's convictions, but we remand this matter to the trial court to strike the improper firearm sentencing enhancement and to impose a deadly weapon enhancement.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.