# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50484-7-II |
| Respondent, | |
| v. | |
| J.B. CRUZ, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found J.B. Cruz guilty of second degree assault by strangulation (domestic violence) and unlawful imprisonment (domestic violence). He appeals both convictions, arguing that his right to a public trial was violated when the trial court held two sidebar conferences in chambers regarding how counsel wanted to proceed following one juror's answers during voir dire, three jurors' hardships, and counsels' peremptory challenges. Cruz also argues that sufficient evidence does not support the strangulation element of his second degree assault conviction. Lastly, Cruz challenges the sentencing court's imposition of certain legal financial obligations (LFOs). We affirm Cruz's convictions, but remand for the trial court to strike the criminal filing fee and the LFO interest accrual provision from his judgment and sentence.

## FACTS

Cruz and Desiree Frieg had been dating for approximately two years. Frieg had a two-year-old daughter from a prior relationship. Frieg's daughter shared a room with her.

One evening while Cruz and Frieg were in Frieg's bedroom, Cruz and Frieg began to argue. Cruz put Frieg into a "choke hold." 2 Verbatim Report of Proceedings (VRP) (March 21, 2017)

at 162. During this choke hold, Cruz's arm was around Frieg's throat for a "[f]ew minutes," and she felt like she "couldn't breathe." 2 VRP (March 21, 2017) at 162, 164. This caused Frieg to "freak[] out." 2 VRP (March 21, 2017) at 162. Cruz's hold got tighter on her throat, and Frieg thought she was going to pass out. Cruz restricted her breathing "[a] little bit." 3 VRP (March 22, 2017) at 239. Frieg's daughter was present in the room and crying during the altercation.

Cruz eventually let go and Frieg got help. The two investigating officers both observed redness on Frieg's neck. Pictures also showed redness around her neck. Frieg went to urgent care for treatment.

The State charged Cruz with second degree assault by strangulation (domestic violence) and unlawful imprisonment (domestic violence).[1]

The case proceeded to a jury trial. At the end of voir dire, the trial court asked twice to speak with the attorneys in chambers "briefly at sidebar."[2] 2 VRP (March 21, 2017) at 118.The first lasted two minutes and the second lasted one minute. Later that day, the trial court made a record of the first sidebar, stating:

> I want to make a record of the sidebars . . . . I had counsel come back into my chambers briefly to discuss a couple of different things. The first one was, I had indicated Juror No. 4 had represented or acknowledged in the questioning that she knew Detective Moss, and there hadn't been any follow-up questioning about that. I asked if you wanted the Court to inquire in regards to that. The defense indicated that was not necessary, that it was a strategic decision on your part not to inquire any further about that. I didn't take any action.

---

[1] RCW 9A.36.021(1)(g); RCW 9A.40.040; RCW 9.94A.535(3)(h). The State also charged Cruz with interfering with the reporting of a domestic violence offense, but the jury found him not guilty of this charge.

[2] Our Supreme Court has clarified that a sidebar conference can be "held outside the courtroom." *State v. Smith*, 181 Wn.2d 508, 519, 334 P.3d 1049 (2014).

> The second subject that we talked about were three of the jurors that had indicated a hardship that might fall within the time period of this trial. Juror No. 8 had the orthodontist appointment on Monday the 27th in the morning to get her braces off. All counsel agreed that juror should be excused, given the magnitude of that event and the fact we may very well be in trial or the jury deliberating on Monday morning.
> Juror No. 20 had the CT scan for his wife on Tuesday the 28th in the morning. All parties agreed to excuse that juror as well on the off chance we might get to either continuing the trial or deliberations on that day as well, given the circumstances of him being transportation for his wife.
> Juror No. 17, who had the standing appointment at the VA, 3:00 on Tuesday, which is today, the parties agreed he could be excused. When I asked him about the appointment, he indicated he had cancelled it and, in fact, has been seated on the jury.

2 VRP (March 21, 2017) at 168-69. Cruz agreed to this summary.

The trial court then made a record of the second sidebar, stating:

> The second time we went back is when the parties had exercised your peremptory challenges. I had filled out the chart indicating the 14 jurors I felt had been selected. I wanted to make sure that both counsel had the same numbers and the same order and, in fact, both of you did. We came back out and I seated the jury at that time.

2 VRP (March 21, 2017) at 169-70. Cruz again agreed to the summary.

The jury found Cruz guilty of second degree assault by strangulation (domestic violence) and unlawful imprisonment (domestic violence). The sentencing court imposed LFOs, including a $200 criminal filing fee, and ordered that all LFOs "bear interest from the date of the judgment until payment in full." Clerk's Papers (CP) at 66. No restitution was ordered. The sentencing court entered an order of indigency at the time of sentencing. Cruz appeals.

## ANALYSIS

A.    PUBLIC TRIAL RIGHT

Cruz argues that his right to a public trial was violated when the trial court conducted two in-chambers sidebars to discuss juror issues. We disagree.

Criminal defendants have a right to a public trial under both the United States Constitution and the Washington Constitution. *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011); U.S. CONST. amend. VI; WASH. CONST.. art. I, § 22. Whether a defendant's public trial right has been violated is a question of law reviewed de novo. *State v. Wise*, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

In determining whether a defendant's public trial right has been violated, we engage in a three-part inquiry: "(1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) if so, was the closure justified?" *State v. Smith*, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014). If the court concludes that the right to a public trial does not apply to the proceeding at issue, it need not reach the second and third inquiry in the analysis. *Id.*

"[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public." *State v. Sublett*, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). In determining whether the public trial right is implicated, we apply the "experience and logic" test. *Id.* at 73. Under the experience prong, we consider whether the proceeding at issue has historically been open to the public. *Id.* Under the logic prong, we ask " 'whether public access plays a significant positive role in the functioning of the particular process in question.' " *Id.* (quoting *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed 2d 1 (1986)). If both prongs are satisfied, the public trial right is implicated. *Id.* (citing *Press–Enterprise Co.*, 478 U.S. at 7-8).

In *Smith*, our Supreme Court held that sidebar conferences are not proceedings implicating the public trial right as they failed both the experience and the logic prong of the proceeding test. 181 Wn.2d at 516-20. The court reasoned:

> Sidebars have traditionally been held outside the hearing of both the jury and the public. Because allowing the public to 'intrude on the huddle' would add nothing positive to sidebars in our courts, we hold that a sidebar conference, even if held outside the courtroom, does not implicate Washington's public trial right.

*Id.* at 519. In *State v. Whitlock*, our Supreme Court clarified its holding in *Smith*, and held that in order to avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record. 188 Wn.2d 511, 520-23, 396 P.3d 310 (2017).

Here, the trial court and counsel met twice in chambers for a sidebar outside the presence of the jury. The first lasted two minutes and the second lasted one minute. The first sidebar involved an inquiry from the trial court on how counsel wanted to proceed with a juror who claimed to know one of the witnesses. This sidebar also included discussion of three jurors' hardships. The second sidebar verified the preemptory challenges exercised by the parties.

The matters discussed were minor ministerial issues that were limited in content to a sidebar's traditional subject areas. Moreover, our Supreme Court has held that public trial rights are not implicated when parties exercise preemptory challenges at a sidebar. *State v. Love*, 183 Wn.2d 598, 607, 354 P.3d 841 (2015), *cert. denied*, 136 S. Ct. 1524 (2016). Additionally, privately addressing juror recusals for illness or other juror hardships does not implicate public trial rights. *State v. Wilson*, 174 Wn. App. 328, 342, 298 P.3d 148, (2013), *review denied*, 184 Wn.2d 1026 (2016).

Based on *Smith*, *Whitlock*, *Love*, and *Wilson*, the sidebars here did not implicate Cruz's right to a public trial. The sidebars were limited to traditional subject areas, brief, and promptly memorialized in the record. Thus, Cruz's argument that his public trial right was violated fails.

B.      SUFFICIENCY OF THE EVIDENCE FOR SECOND DEGREE ASSAULT

Cruz next argues that he was denied his due process rights because the State failed to prove all elements of second degree assault by strangulation beyond a reasonable doubt. He contends that the evidence at trial was insufficient for a reasonable person to conclude that he obstructed Frieg's blood flow or her ability to breathe or acted with the specific intent to cause that result. We disagree.

"Due process requires the State to prove all elements of the crime beyond a reasonable doubt." *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006), *review denied*, 160 Wn.2d 1017 (2007). Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, it allows a rational trier of fact to find all of the elements of the crime charged beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017). When reviewing the sufficiency of the State's evidence, we consider circumstantial evidence and direct evidence as equally reliable. *Id.* at 266. We defer to the trier of fact on issues of conflicting witness testimony, witness credibility, and the persuasiveness of the evidence. *Id.*

To convict an individual of second degree assault by strangulation, the State must prove that he or she, under circumstances not amounting to first degree assault, assaulted another by

strangulation or suffocation. RCW 9A.36.021(1)(g). To prove strangulation, the State must prove that the individual either (1) obstructed another person's blood flow or ability to breathe or (2) intended to obstruct another person's blood flow or ability to breathe. RCW 9A.04.110(26).

In *State v. Rodriquez*, the court concluded that the meaning of "obstruct" in the strangulation statute does not require a complete obstruction. 187 Wn. App. 922, 935, 352 P.3d 200 , *review denied*, 184 Wn.2d 1011 (2015). Rather, the statute applies equally to complete and partial obstructions of either a victim's ability to breathe or to experience blood flow. *Id*.

Here, the evidence shows that Cruz put Frieg into a "choke hold." 2 VRP (March 21, 2017) at 162. During this choke hold, Cruz's arm was around Frieg's throat for a "[f]ew minutes," and she felt like she "couldn't breathe." 2 VRP (March 21, 2017) 162-64. This caused Frieg to "freak[] out." 2 VRP (March 21, 2017) at 162. Cruz's hold got tighter on her throat and restricted her breathing "[a] little bit." 3 VRP (March 22, 2017) at 239. Frieg thought she was going to pass out. The two investigating officers both observed redness on Frieg's neck. Pictures also showed redness around her neck.

Viewing this evidence is a light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that Cruz compressed Frieg's neck and partially obstructed her ability to breathe. This is sufficient to prove second degree assault by strangulation. Therefore, sufficient evidence supports Cruz's conviction.

C.     LEGAL FINANCIAL OBLIGATIONS

Cruz challenges the imposition of certain LFOs and interest in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). Cruz argues that we should strike the $200 criminal filing

fee and eliminate all interest accruals on the LFOs. The State concedes that the $200 criminal filing fee and the interest accrual provision should be stricken.

Legislative amendments to the LFO statutes in 2018 prohibit sentencing courts from imposing criminal filing fees or interest accrual on the nonrestitution portions of LFOs on indigent defendants. RCW 36.18.020(2)(h); RCW 10.82.090; *Ramirez*, 191 Wn.2d at 746. Because Cruz was found indigent by the sentencing court and no restitution was ordered, we accept the State's concession that the criminal filing fee and interest accrual provision should be stricken from Cruz's judgment and sentence.

We affirm Cruz's convictions, but we remand to the trial court to strike the criminal filing fee and the LFO interest accrual provision from Cruz's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Sutton, J.