# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON<br><br>                          Respondent,<br><br>        v.<br><br>ABDIFATAH AHMED ALI,<br><br>                          Appellant. | No. 77523-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br>FILED: April 22, 2019 |

CHUN, J. — A jury convicted Abdifatah Ali of multiple charges. On appeal, Ali contends his convictions must be reversed due to (1) the denial of his right to an open public trial, (2) prosecutorial misconduct, and (3) ineffective assistance of counsel. Because Ali has not demonstrated a basis to reverse his convictions, we affirm.

I.
BACKGROUND

By amended information, the State charged Ali with one count of domestic violence felony violation of a court order, one count of malicious mischief in the second degree involving domestic violence, one count of tampering with a witness, and four counts of domestic violence misdemeanor violation of a court order.[1]

A. Motion in Limine

Before trial, on September 25, 2017, Ali moved to redact audio recordings,

---

[1] The facts underlying the State's charges against Ali are largely unimportant to this strictly procedural appeal.

and corresponding transcripts, of several calls he made from the King County Jail (jail calls) that the State intended to use at trial. The trial court heard argument on the motion and ruled on most of Ali's proposed redactions in open court. After discussing its analysis on two remaining issues at the hearing, the trial court announced that it would e-mail its decision by the end of the day, and that the decision would indicate "the specific lines and pages" that would be redacted.

The trial court e-mailed its ruling to the parties, specifying the lines and pages to be redacted, at 5:15 pm the same day as the hearing. Neither the trial court nor the parties contemporaneously memorialized the e-mail ruling on the record.[2]

The case proceeded to a jury trial the next day. Prior to the State offering the jail calls into evidence at trial, Ali alerted the trial court about some jail calls that had not been redacted pursuant to the trial court's ruling. The State agreed to make the unredacted jail calls conform to the court's ruling and to offer the newly redacted recordings as a substitute exhibit. The State later introduced the redacted recordings into evidence, along with redacted transcripts of the jail calls as demonstrative evidence for the jury's review. Ali did not object to admitting the redacted jail calls into evidence.

B. Closing Argument

During closing argument, the State repeatedly acknowledged that it had the burden to prove the charges against Ali beyond a reasonable doubt. In

---

[2] Per an agreed order, the trial court filed the September 25, 2017 e-mail on May 29, 2018.

2

relevant part, the prosecutor argued:

> First, beyond a reasonable doubt is the burden that I bear. It is not some mythical, unattainable standard of proof. It is the same standard of being applied by countless jurors across the country all of the time regardless of the charge. Let's talk about what it is and what it is not.
>
> Now, up on the TV is a slide that summarizes the "reasonable doubt" instruction for you. It is Instruction, I believe, No. 4 in your jury packet, and it is a doubt for which a reason exits. <u>There has to be a reason for you to doubt the truth of the charges that have been proven</u>, but there is more to it. It is a doubt that would exist in the mind of a reasonable person. It just can't be any doubt or any explanation. It has to be a doubt for which it is reasonable. It is based on the evidence or lack of evidence, but keep in mind this reasonable person's standard.
>
> So the court has defined it for you. Again, it is in Jury Instruction No. 4. When you look at it, what you won't find in there is doubt beyond every possible doubt. And so what does this mean? What that means is, the law does not place an unrealistic burden on you in deciding this case. It is a high burden. It is a cornerstone of our justice system, but it's not an unattainable one.[3]

RP 441-42 (emphasis added).[4] Ali did not object to this argument.

At the close of trial, the jury acquitted Ali of malicious mischief and could not reach a verdict on the felony violation of a court order charge. It found Ali guilty of the remaining charges of witness tampering and four counts of

---

[3] In Instruction No. 4, the trial court instructed the jury as follows:

The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exits as to these elements.

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

[4] Ali claims the emphasized portion of the prosecutor's closing misstates the State's burden of proof.

misdemeanor violation of a court order. Ali now appeals.

## II.
## ANALYSIS

### A. Public Trial Right

The court e-mailed its ruling on Ali's motion in limine without conducting a Bone-Club[5] analysis. Ali contends this violated his right to a public trial. The State argues the trial court did not violate Ali's public trial right and, even if so, any closure did not exceed a de minimis level.

Under article I, section 22 of the Washington Constitution, a criminal defendant has a right to a "speedy public trial." State v. Love, 183 Wn.2d 598, 604-05, 354 P.3d 841 (2015). Article I, section 10 "guarantees the public that '[j]ustice in all cases shall be administered openly, and without unnecessarily delay.'" Love, 183 Wn.2d at 605 (quoting WASH. CONST. art. I, § 10). We refer to these two constitutional provisions collectively as the "public trial right." Love, 183 Wn.2d at 605.

When reviewing a public trial challenge, we use a three-step framework to guide our analysis. "First, we ask if the public trial right attaches to the proceeding at issue. Second, if the right attaches we ask if the courtroom was closed. And third, we ask if the closure was justified." Love, 183 Wn.2d at 605 (citing State v. Smith, 181 Wn.2d 508, 513-14, 334 P.3d 1049 (2014)). "The appellant carries the burden on the first two steps; the proponent of the closure carries the third." Love, 183 Wn.2d at 605. We review a defendant's

---

[5] State v. Bone-Club, 128 Wn.2d 254, 906 P.2d 325 (1995).

constitutional public trial challenge de novo as a question of law. State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

We assume, without deciding, that the public trial right attached to the proceedings as issue. Even so, Ali must still establish closure. On this point, he argues closure occurred because the public could not immediately access the trial court's e-mail ruling. The State counters that a trial court's written order does not constitute closure.

A closure occurs "when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011). Ali does not allege that courtroom closure occurred in this manner.

Closure also occurs when the court holds a portion of the trial in a place inaccessible to spectators. Love, 183 Wn.2d at 606 (citing Lormor, 172 Wn.2d at 93)). In Love, the appellant argued that "the possibility that spectators at [the] trial could not hear the discussion about for cause challenges or see the struck juror sheet used for preemptory challenges rendered this portion of [the] trial inaccessible to the public." 183 Wn.2d at 606. Rejecting this argument, the court held as follows:

> [T]he public had ample opportunity to oversee the selection of Love's jury because no portion of the process was concealed from the public; no juror was questioned in chambers. To the contrary, observers could watch the trial judge and counsel ask questions of potential jurors, listen to the answers to those questions, see counsel exercise challenges at the bench and on paper, and ultimately evaluate the empaneled jury. The transcript of the discussion about for cause challenges and the struck juror sheet showing the peremptory challenges are both publicly available. The public was

present for and could scrutinize the selection of Love's jury from start to finish, affording him the safeguards of the public trial right missing in cases where we found closures of jury selection. We hold the procedures used at Love's trial comport with the minimum guarantees of the public trial right and find no closure here.

Love, 183 Wn.2d at 607 (citations omitted). Thereafter, the Supreme Court held that "written peremptory challenges are consistent with the public trial right so long as they are filed in the public record." Love, 183 Wn.2d at 607.

We use Love to guide our analysis here. Here, the trial court considered Ali's motion in limine, which concerned only evidentiary issues, on the record. Additionally, the trial court discussed its reasoning and the rationale for its rulings on the record. During the hearing on Ali's motion in limine, observers could watch the colloquy between the trial court and the parties, listen to counsel's argument, and hear the trial court's rulings on various redactions.

With respect to the two issues upon which the trial court reserved its decision on line and page redactions, the trial court put its consideration of those two issues on the record as well:

> And then we are back to the suicide watch and felony, which—which I need to think about. I know that—let me just say this: I believe in these context—in this context, the assertion by the State that they want to use this to show that there is being manipulation on the part of Mr. Ali in making these statements to prevent Ms. Hill from testifying; I think that that is an appropriate use. The question is, whether they are prejudicial, so prejudicial as to not—to not be appropriate to use.

> And with regard to the—same thing with regard to the two felonies. I mean, that's a similar thing in the context of the State is asserting it was used to prevent Ms. Hill from wanting to testify. Again, the court has to make the determination as to whether or not that we have reached that point where it's just too prejudicial to let it in. I want to think about it, but I know that you need to know before the end of the day.

> . . .

6

All right. I should be able to figure this out. I'm going to think about it some more and read them in their entirety, and so I should be able to make that decision by the end of the day, and we can send it in an e-mail, the specific lines and pages.

The trial court's e-mail to the parties specifying the additional page and line redactions does not contain any further analysis or conclusions.

Thereafter, the trial court admitted the jail call recordings as well as transcripts of the same, which the State offered as demonstrative exhibits. These reflect the trial court's ruling on the redactions. Although no one immediately put the trial court's e-mail on the record, the parties did so subsequently.

We conclude that the e-mail ruling, following an on-the-record motion in limine hearing, did not constitute a closure. For the foregoing reasons, we conclude Ali has failed to demonstrate a violation of his public trial right.[6]

B. Prosecutorial Misconduct

Next, Ali claims that the prosecutor committed misconduct during closing arguments by misleading the jury and subtly shifting the State's burden of proof, thereby depriving him of his right to a fair trial. We disagree.

In order to establish prosecutorial misconduct, Ali must show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct qualified as improper and prejudicial.[7] State v. Thorgerson, 172 Wn.2d 438, 442, 285 P.3d 43 (2011). However, a defendant's failure to object to a

---

[6] Given our conclusion, we need not consider the third step of the public trial right analysis.

[7] "Prejudice on the part of the prosecutor is established only where 'there is a substantial likelihood the instances of misconduct affected the jury's verdict.'" State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (quoting State v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)).

prosecutor's improper remark at trial "'constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[8] Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Ali did not object to the comment with which he now takes issue. Thus, he must show that the comment qualified as so flagrant and ill-intentioned that it caused enduring and resulting prejudice. He must also show that the prejudice could not have been neutralized by an admonition to the jury. However, Ali fails to argue, must less explain, why the prosecutor's remark could not have been cured if he had objected. Upon such an objection, the trial court could have instructed the jury to disregard this portion of the State's argument, remember that the State's argument does not constitute the law, and rely on the evidence presented at trial and the instructions provided by the court.

Because Ali does not show that the State's closing argument "cause[d] an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury," he has waived his prosecutorial misconduct claim. Russell, 125 Wn.2d at 86.

---

[8] The Washington Supreme Court has found flagrant and ill-intentioned misconduct "in a narrow set of cases where [the Court was] concerned about the jury drawing improper inferences from the evidence, such as those comments alluding to race or a defendant's membership in a particular group, or where the prosecutor otherwise comments on the evidence in an inflammatory manner." In re Pers. Restraint of Phelps, 190 Wn.2d 155, 170, 410 P.3d 1142 (2018).

## C. Ineffective Assistance of Counsel

Lastly, Ali makes a claim of ineffective assistance because his counsel did not object to the prosecutor's closing argument that misstated the reasonable doubt standard.

The Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution guarantees effective assistance of counsel. State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996). To prevail on a claim of ineffective assistance of trial counsel, a defendant must prove both deficient performance and prejudice.[9] State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). We need not address both prongs of the analysis if the defendant's showing on one prong is insufficient. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). We review claims of ineffective assistance of counsel, which is a mixed question of law and fact, de novo. Jones, 183 Wn.2d at 338-39.

We begin with a strong presumption that counsel's performance was effective. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To rebut this presumption, Ali must establish the absence of any "'conceivable legitimate tactic explaining counsel's performance.'" Grier, 171 Wn.2d at 33 (quoting State v. Reichenback, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Upon review, if

---

[9] Establishing deficient performance requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all the circumstances. State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). "[S]crutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness." Thomas, 109 Wn.2d at 226. Prejudice suffices to support a claim of ineffective assistance of counsel when counsel's errors are so serious as to deprive the defendant of a fair trial. Hendrickson, 129 Wn.2d at 78.

defense counsel's conduct can be considered a legitimate trial strategy or tactic, counsel's performance is not deficient. Grier, 171 Wn.2d at 33.

"Lawyers do not commonly object during closing argument 'absent egregious misstatements.'" In re Pers. Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004) (quoting U.S. v. Necoechea, 986 F.2d 1273, 1291 (9th Cir. 1993)). Beyond egregious circumstances, defense counsel's decisions about whether and when to object are a matter of strategic choice. State v. Johnston, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

Here, the trial court properly instructed the jury regarding the State's burden of proof and the prosecutor referred to the State's burden of proof multiple times before making the remark that Ali now challenges. Ali's trial counsel may have decided not to object because such an objection could unnecessarily highlight the prosecutor's argument. Upon this record, we conclude that Ali has not overcome the presumption that his counsel's failure to object was a strategic choice. Accordingly, Ali's ineffective assistance of trial counsel claim fails.

We affirm.

_____
Chun, J.

WE CONCUR:

_____          _____
Mann, J.                                          Appelwick, C.J.

10